NORTH CAROLINA

FILED

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION

2011 JUL 28   AM

CALDWELL COUNTY                                          11 CVS _1058_

CALDWELL COUNTY, C.S.C.

PARKWAY BANK,                          )
                                       )
        Plaintiff,                     )
                                       )
vs.                                    )
                                       )        **VERIFIED COMPLAINT**
MINGO TRIBAL PRESERVATION              )
TRUST, JESSE W. HORTON, JR.,           )
TRUSTEE, and JESSE W. HORTON,          )
JR., INDIVIDUALLY,                     )
                                       )
        Defendants.                    )

---

Plaintiff, Parkway Bank (the "Bank"), complaining of Mingo Tribal Preservation Trust, Jesse W. Horton, Jr., Trustee, and Jesse W. Horton, Jr., individually, alleges and says:

## I. PARTIES.

1.      The Bank is a North Carolina banking corporation, organized and existing under the laws of the State of North Carolina, with places of business in North Carolina, including Lenoir, Caldwell County, North Carolina.

2.      Upon information and belief, Defendant Mingo Tribal Preservation Trust ("Borrower") is trust located in Watauga County, North Carolina.

3.      Upon information and belief, Defendant Jesse W. Horton, Jr. is a Trustee of the Mingo Tribal Preservation Trust.

4.      Upon information and belief, Defendant Jesse W. Horton, Jr. ("Guarantor") is a citizen and resident of Watauga County, North Carolina.

## II. CLAIMS FOR RELIEF.

### A.  CLAIM ONE: BREACH OF CONTRACT – PROMISSORY NOTE.

5.      The Bank re-alleges all of the above paragraphs by reference.

6.      On or about June 7, 2007, Borrower executed and delivered to Bank a Promissory Note (the "Original Note") in the principal amount of $8,850,000.00. A true and correct copy of the Original Note is attached hereto and incorporated herein by reference as **Exhibit A**.

7.    The Original Note has been modified several times.  On or about December 7, 2009, the date of the most recent modification, Borrower executed and delivered to Bank a Loan Modification Agreement that renewed the terms of the Original Note, and which was recorded on February 8, 2010 in Book 965 at Page 333, Yadkin County Registry (as modified, the "Note").  A true and correct copy of the Note is attached hereto and incorporated herein by reference as **Exhibit B**.

8.    The Note evidences Borrower's obligation to pay the Bank $8,850,000.00, plus interest on said amount upon such terms as are set forth in the Note.

9.    The Note was secured by a Deed of Trust dated June 7, 2007, in favor of Gary T. Clawson, Trustee for Bank, encumbering 1,368.53 acres in Yadkin County, North Carolina (the "Real Property").

10.    Borrower defaulted under the terms of the Note by failing to make the payments required by the terms of the Note.  Thereafter, the Bank instituted a foreclosure action in the General Court of Justice for Yadkin County, North Carolina, Case No. 11 SP 35.  Pursuant to an Order entered by the Yadkin County Clerk of Superior Court, and after due advertisement, the Real Property was sold at public sale on April 15, 2011, to the highest bidder for the sum of $5,700,000.00.  A true and correct copy of the Final Report and Account of Foreclosure Sale for the Real Property, dated June 30, 2011, is attached hereto as **Exhibit C**, and incorporated herein by reference.

11.    After application of the sale proceeds and all costs involved in the public sale, a deficiency balance remains on the Note that is due and owing to Bank in the amount of $3,836,146.61, plus continuing interest after April 25, 2011, at the daily rate of $586.0780.

12.    The Bank has made demand upon the Borrower for payment of the balance remaining due pursuant to the Note, but Borrower has failed and refused to pay same.  Borrower's failure to make payment when and as required by the Note constitutes a breach of contract that has damaged Bank and entitles Bank to recover from Borrower the entire principal and interest balance due under the Note, plus attorneys' fees and court costs.

13.    The Bank has given Borrower notice pursuant to N.C. Gen. Stat. § 6-21.2 that it intends to enforce its right to collect attorneys' fees from Borrower, but Borrower has failed to pay the outstanding balance due to Bank within the time period allowed by said statute, and thus is liable to Bank for attorneys' fees equal to fifteen percent (15%) of the amount owed to Bank.

## B.  CLAIM TWO: BREACH OF CONTRACT – GUARANTY.

14.    Bank re-alleges all of the above paragraphs by reference.

15.    On or about June 7, 2007, Guarantor executed and delivered to Bank a Guaranty (the "Guaranty"), a true and correct copy of which is attached hereto and incorporated herein by reference as **Exhibit D**.

2

16. The Guaranty provides that Guarantor unconditionally guarantees payment to Bank of up to $8,850,000.00 in principal, plus accrued interest thereon, late fees, and costs of collection (including attorneys' fees) of the obligations and liabilities of Borrower to Bank.

17. Borrower has defaulted under the terms of the Note by failing to make the payments required by the terms of the Note.

18. Bank has made demand upon Guarantor for payment of the balance remaining due pursuant to the Note and the Guaranty, but Guarantor has failed and refused to pay same. Guarantor's failure to make payment when and as required by the Note and the Guaranty constitutes a breach of contract that has damaged Bank and entitles Bank to recover from Guarantor the entire unpaid balance due under the Note, plus attorneys' fees and court costs.

19. Bank has given Guarantor notice pursuant to N.C. Gen. Stat. § 6-21.2 that it intends to enforce its right to collect attorneys' fees from Guarantor, but Guarantor has failed to pay the outstanding balance due to Bank within the time period allowed by said Statute, and thus is liable to Bank for attorneys' fees equal to fifteen percent (15%) of the amount owed to Bank.

WHEREFORE, Bank respectfully requests that:

A. Pursuant to Claim One and Claim Two it have and recover of the Defendants, jointly and severally, the sum of $3,836,146.01, plus continuing interest after April 25, 2011 at the daily rate of $586.0780;

B. It have and recover of the Defendants, jointly and severally, the costs of this action, including without limitation, attorney's fees pursuant to N.C. Gen. Stat. § 6-21.2; and,

C. It be awarded such other and further relief as is necessary and just.

This the 26th day of July, 2011.

_____
D. ANDERSON CARMEN, N.C. State Bar No. 10270
ADAM T. DUKE, N.C. State Bar No. 39648
*Attorneys for Parkway Bank*

OF COUNSEL:

BELL, DAVIS & PITT, P.A.
100 North Cherry Street, Suite 600
P. O. Box 21029
Winston-Salem, NC 27120-1029
Telephone: (336) 722-3700

3

| | | RT # 6087 |
|---|---|---|
| MINGO TRIBAL PRESERVATION TRUST<br>PO BOX 3410<br>BOONE, NC 28607 | A..WAY BANK<br>.09 WILKESBORO BLVD NE<br>PO BOX 1058<br>LENOIR, NC 28645 | Loan Nu_____<br>Date 06-0_-2007<br>Maturity Date 12-07-2008<br>Loan Amount $ 8,850,000.00<br>Renewal Of _____<br>OFFICER # 002CS |

| BORROWER'S NAME AND ADDRESS | LENDER'S NAME AND ADDRESS |
|---|---|
| "I" includes each borrower above, jointly and severally. | "You" means the lender, its successors and assigns. |

For value received, I promise to pay to you, or your order, at your address listed above the PRINCIPAL sum of __FIGHT MILLION FIGHT HUNDRED__ __FIFTY THOUSAND AND NO/100__ Dollars $ 8,850,000.00

☐ **Single Advance:** I will receive all of this principal sum on _____. No additional advances are contemplated under this note.

☒ **Multiple Advance:** The principal sum shown above is the maximum amount of principal I can borrow under this note. On 06-07-2007 _____ I will receive the amount of $ _____ and future principal advances are contemplated.

   **Conditions:** The conditions for future advances are FUTURE ADVANCES WILL BE FOR QUARTERLY INTEREST RESERVE PAYMENTS ONLY.

   ☐ **Open End Credit:** You and I agree that I may borrow up to the maximum amount of principal more than one time. This feature is subject to all other conditions and expires on _____.

   ☒ **Closed End Credit:** You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions).

**INTEREST:** I agree to pay interest on the outstanding principal balance from 06-07-2007 _____ at the rate of _____ 8.750 % per year until 06-08-2007.

☒ **Variable Rate:** This rate may then change as stated below.

   ☒ **Index Rate:** The future rate will be 0.500 PERCENT ABOVE _____ the following index rate: THE BASE RATE ON CORPORATE LOANS POSTED BY AT LEAST 75% OF THE NATION'S 30 LARGEST BANKS KNOWN AS THE WALL STREET JOURNAL PRIME RATE. THE RESULT OF THIS CALCULATION WILL BE ROUNDED TO THE NEAREST 0.125.

   ☐ **No index:** The future rate will not be subject to any internal or external index. It will be entirely in your control.

   ☒ **Frequency and Timing:** The rate on this note may change as often as EVERY DAY BEGINNING 06-08-2007

      A change in the interest rate will take effect ON THE SAME DAY

   ☐ **Limitations:** During the term of this loan, the applicable annual interest rate will not be more than _____ % or less than _____ %. The rate may not change more than _____ % each _____.

   **Effect of Variable Rate:** A change in the interest rate will have the following effect on the payments:

   ☒ The amount of each scheduled payment will change.      ☐ The amount of the final payment will change.

   ☐ _____

**ACCRUAL METHOD:** Interest will be calculated on a ACTUAL/360 _____ basis.

**POST MATURITY RATE:** I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as stated below:

   ☒ on the same fixed or variable rate basis in effect before maturity (as indicated above).

   ☐ at a rate equal to _____

☒ **LATE CHARGE:** If a payment is made more than 2 _____ days after it is due, I agree to pay a late charge of 4.000% OF THE LATE AMOUNT.

☐ **ADDITIONAL CHARGES:** In addition to interest, I agree to pay the following charges which ☐ are ☐ are not included in the principal amount above. _____

**PAYMENTS:** I agree to pay this note as follows:

INTEREST WILL BE DUE QUARTERLY BASED ON THE AMOUNT OF OUTSTANDING PRINCIPAL BALANCE BEGINNING ON SEPTEMBER 7, 2007 AND EACH QUARTER THEREAFTER. THERE WILL BE ONE FINAL PAYMENT OF ALL OUTSTANDING PRINCIPAL AND ACCRUED INTEREST ON DECEMBER 7, 2008.

**ADDITIONAL TERMS:** GUARANTY AGREEMENT DATED JUNE 7, 2007.



**EXHIBIT**

**A**

☒ **SECURITY:** This note is separately secured by (describe separate document by type and date) REAL ESTATE DEED OF TRUST DATED JUNE 7, 2007.

(This section is for your internal use. Failure to list a separate security document does not mean the agreement will not secure this note.)

**PURPOSE:** The purpose of this loan is REFINANCE INVESTMENT PROPERTY AND EXTRACT EQUITY FOR OTHER INVESTMENTS

**SIGNATURES:** I AGREE TO THE TERMS OF THIS NOTE (INCLUDING THOSE ON PAGE 2) AND EXECUTE THIS NOTE UNDER SEAL. I have received a copy on today's date.

MINGO TRIBAL PRESERVATION TRUST

Signature for Lender

_Carol Shinn_
CAROL S. SHINN, CHIEF CREDIT OFFICER

_Jesse W. Horton Jr._ _____ (Seal)
JESSE W. HORTON, JR., TRUSTEE

_Harry T. Branch_ _____ (Seal)
HARRY T. BRANCH, TRUSTEE

_George E. Wilson_ _____ (Seal)
GEORGE E. WILSON, TRUSTEE

_____ (Seal)

UNIVERSAL NOTE                                        V07.20
ExpereΞ ©1984, 1991 Bankers Systems, Inc., St. Cloud, MN Form UN-NC 3/7/2002                    (page 1 of 2)

**DEFINITIONS:** As used on page 1, "□" means the terms that apply to this loan. "I," "me" or "my" means each Borrower who signs this note and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this note together (referred to as "us"). "You" or "your" means the Lender and its successors and assigns.

**APPLICABLE LAW:** The law of the state of North Carolina will govern this note. Any term of this note which is contrary to applicable law will not be effective, unless the law permits you and me to agree to such a variation. If any provision of this agreement cannot be enforced according to its terms, this fact will not affect the enforceability of the remainder of this agreement. No modification of this agreement may be made without your express written consent. Time is of the essence in this agreement.

**COMMISSIONS OR OTHER REMUNERATION:** I understand and agree that any insurance premiums paid to insurance companies as part of this note will involve money retained by you or paid back to you as commissions or other remuneration.

In addition, I understand and agree that some other payments to third parties as part of this note may also involve money retained by you or paid back to you as commissions or other remuneration.

**PAYMENTS:** Each payment I make on this note will first reduce the amount I owe you for charges which are neither interest nor principal. The remainder of each payment will then reduce accrued unpaid interest, and then unpaid principal. If you and I agree to a different application of payments, we will describe our agreement on this note. I may prepay a part of, or the entire balance of this loan without penalty, unless we specify to the contrary on this note. Any partial prepayment will not excuse or reduce any later scheduled payment until this note is paid in full (unless, when I make the prepayment, you and I agree in writing to the contrary).

**INTEREST:** Interest accrues on the principal remaining unpaid from time to time, until paid in full. If I receive the principal in more than one advance, each advance will start to earn interest only when I receive the advance. The interest rate in effect on this note at any given time will apply to the entire principal advanced at that time. Notwithstanding anything to the contrary, I do not agree to pay and you do not intend to charge any rate of interest that is higher than the maximum rate of interest you could charge under applicable law for the extension of credit that is agreed to here (either before or after maturity). If any rate of interest accrual is sent and is in error, we mutually agree to correct it, and if you actually collect more interest than allowed by law and this agreement, you agree to refund it to me.

**INDEX RATE:** The index will serve as a device for setting the rate on this note. You do not guarantee by selecting this index, or the margin, that the rate on this note will be the same rate you charge on any other loans or class of loans to me or other borrowers.

**ACCRUAL METHOD:** The amount of interest that I will pay on this loan will be calculated using the interest rate and accrual method stated on page 1 of this note. For the purpose of interest calculation, the accrual method will determine the number of days in a "year." If no accrual method is stated, then you may use any reasonable accrual method for calculating interest.

**POST MATURITY RATE:** For purposes of deciding when the "Post Maturity Rate" (shown on page 1) applies, the term "maturity" means the date of the last scheduled payment indicated on page 1 of this note or the date you accelerate payment on the note, whichever is earlier.

**SINGLE ADVANCE LOANS:** If this is a single advance loan, you and I expect that you will make only one advance of principal. However, you may add other amounts to the principal if you make any payments described in the "PAYMENTS BY LENDER" paragraph below.

**MULTIPLE ADVANCE LOANS:** If this is a multiple advance loan, you and I expect that you will make more than one advance of principal. If this is closed end credit, repaying a part of the principal will not entitle me to additional credit.

**PAYMENTS BY LENDER:** If you are authorized to pay, on my behalf, charges I am obligated to pay (such as property insurance premiums), then you may treat those payments made by you as advances and add them to the unpaid principal under this note, or you may demand immediate payment of the charges.

**SET-OFF:** I agree that you may set off any amount due and payable under this note against any right I have to receive money from you.

"Right to receive money from you" means:
(1) any deposit account balance I have with you;
(2) any money owed to me on an item presented to you or in your possession for collection or exchange; and
(3) any repurchase agreement or other nondeposit obligation.

"Any amount due and payable under this note" means the total amount of which you are entitled to demand payment under the terms of this note at the time you set off. This total includes any balance the due date for which you properly accelerate under this note.

If my right to receive money from you is also owned by someone who has not agreed to pay this note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement. Your right of set-off does not apply to an account or other obligation where my rights are only as a representative. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set off this debt against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

**REAL ESTATE OR RESIDENCE SECURITY:** If this note is secured by real estate or a residence that is personal property, the existence of a default and your remedies for such a default will be determined by applicable law, by the terms of any separate instrument creating the security interest and, to the extent not prohibited by law and not contrary to the terms of the separate security instrument, by the "Default" and "Remedies" paragraphs herein.

**DEFAULT:** I will be in default if any one or more of the following occur: (1) I fail to make a payment on time or in the amount due; (2) I fail keep the property insured, if required; (3) I fail to pay, or keep any promise, on any debt or agreement I have with you; (4) any other creditor of mine attempts to collect any debt I owe him through court proceedings; (5) I die, am declared incompetent, make an assignment for the benefit of creditors, or become insolvent (either because my liabilities exceed my assets or I am unable to pay my debts as they become due); (6) I make any written statement or provide any financial information that is untrue or inaccurate at the time it was provided; (7) I do or fail to do something which causes you to believe that you will have difficulty collecting the amount I owe you; (8) any collateral securing this note is used in a manner or for a purpose which threatens confiscation by a legal authority; (9) I change my name or assume an additional name without first notifying you before making such a change; (10) I fail to plant, cultivate and harvest crops in due season, if I am a producer of crops; (11) any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 C.F.R. Part 1940, Subpart G, Exhibit M.

**REMEDIES:** If I am in default on this note you have, but are not limited to, the following remedies:
(1) You may demand immediate payment of all I owe you under this note (principal, accrued unpaid interest and other accrued charges). If this is a high cost home loan, as defined under North Carolina law, your ability to accelerate all that I owe under this note is limited by N.C. Code § 24-1.1E (b)(1).
(2) You may set off this debt against any right I have to the payment of money from you, subject to the terms of the "Set-Off" paragraph herein.
(3) You may demand security, additional security, or additional parties to be obligated to pay this note as a condition for not using any other remedy.
(4) You may refuse to make advances to me or allow purchases on credit by me.
(5) You may use any remedy you have under state or federal law.

By selecting any one or more of these remedies you do not give up your right to later use any other remedy. By waiving your right to declare an event to be a default, you do not waive your right to later consider the event as a default if it continues or happens again.

**COLLECTION COSTS AND ATTORNEYS' FEES:** I agree to pay all costs of collection, replevin or any similar type of cost if I am in default. In addition, if you hire an attorney to collect this note, I also agree to pay reasonable attorneys' fees plus court costs (except where prohibited by law). To the extent permitted by the United States Bankruptcy Code, I also agree to pay the reasonable attorney's fees and costs you incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.

**WAIVER:** I give up my rights to require you to do certain things. I will not require you to:
(1) demand payment of amounts due (presentment);
(2) obtain official certification of nonpayment (protest); or
(3) give notice that amounts due have not been paid (notice of dishonor).

I waive any defenses I have based on suretyship or impairment of collateral.

**OBLIGATIONS INDEPENDENT:** I understand that I must pay this note even if someone else has also agreed to pay it (by, for example, signing this form or a separate guarantee or endorsement). You may sue me alone, or anyone else who is obligated on this note, or any number of us together, to collect this note. You may do so without any notice that it has not been paid (notice of dishonor). You may without notice release any party to this agreement without releasing any other party. If you give up any of your rights, with or without notice, it will not affect my duty to pay this note. Any extension of new credit to any of us, or renewal of this note by all or less than all of us will not release me from my duty to pay it. (Of course, you are entitled to only one payment in full.) I agree that you may at your option extend this note or the debt represented by this note, or any portion of the note or debt, from time to time without limit or notice and for any term without affecting my liability for payment of the note. I will not assign my obligation under this agreement without your prior written approval.

**FINANCIAL INFORMATION:** I agree to provide you, upon request, any financial statement or information you may deem necessary. I warrant that the financial statements and information I provide to you are or will be accurate, correct and complete.

**NOTICE:** Unless otherwise required by law, any notice to me shall be given by delivering it or by mailing it by first class mail addressed to me at my last known address. My current address is on page 1. I agree to inform you in writing of any change in my address. I will give any notice to you by mailing it first class to your address stated on page 1 of this agreement, or to any other address that you have designated.

| DATE OF TRANSACTION | PRINCIPAL ADVANCE | BORROWER'S INITIALS (not required) | PRINCIPAL PAYMENTS | PRINCIPAL BALANCE | INTEREST RATE | INTEREST PAYMENTS | INTEREST PAID THROUGH |
|---|---|---|---|---|---|---|---|
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |

Exhibit © 1994, 1991 Bankers Systems, Inc., St. Cloud, MN

*(page 2 of 2)*

Case 5:13-cv-00113-RLV-DCK   Document 1-1   Filed 08/12/13   Page 5 of 17

FILED
YADKIN COUNTY, NC
KAREN H. WAGONER
REGISTER OF DEEDS

| FILED | Feb 08, 2010 |
| AT | 09:14:11 am |
| BOOK | 00965 |
| START PAGE | 0333 |
| END PAGE | 0340 |
| INSTRUMENT # | 00390 |

LOAN MODIFICATION AGREEMENT

Prepared by and return to:
>       Randall A. Underwood, Esq.
>       Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P.
>       Post Office Box 26000
>       Greensboro, NC 27420

This Loan Modification Agreement, effective this the 7th day of December, 2009, by and among Mingo Tribal Preservation Trust ("Borrower"), Parkway Bank, a commercial bank chartered and existing under the laws of the State of North Carolina ("Lender"), Todd H. Perdue, as Trustee ("Trustee") and Jesse W. Horton, Jr. ("Guarantor").

W I T N E S S E T H:

WHEREAS, Lender made a loan to Borrower (the "Loan") in the principal amount of up to $8,850,000.00, which Loan is evidenced by a Promissory Note dated June 7, 2007 from Borrower in the stated amount of $8,850,000.00, as modified by (i) a Loan Modification Agreement among the parties dated December 7, 2008 and recorded in Book 922, Page 347 of the Yadkin County, North Carolina Public Registry and (ii) a Loan Modification Agreement among the parties dated March 7, 2009 and recorded in Book 940, Page 457 of the Yadkin County, North Carolina Public Registry (the "Note") and secured by a Deed of Trust dated June 7, 2007 from Borrower to Trustee for the benefit of Lender which is recorded in Book 843, Page 434 of the Yadkin County, North Carolina Public Registry, as modified by the two Loan Modification Agreements described above (the "Deed of Trust"), and by the personal Guaranty dated June 7, 2007 executed by Guarantor (the "Guaranty"); and

WHEREAS, the parties have agreed to modify the agreements with respect to the Loan as set forth herein.

NOW, THEREFORE, in consideration of the mutual covenants and agreements set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.      **Modifications.**  The Note is hereby modified as follows:

>       (a)     The section of the Note entitled **"PAYMENTS"** is hereby deleted in its entirety and replaced with the following:

>       **"PAYMENTS:**  I agree to pay this note as follows:

EXHIBIT
B

Interest shall accrue on the outstanding indebtedness from the date of this note until the indebtedness is paid in full. Interest on the outstanding principal balance will be due quarterly beginning September 7, 2007 and continuing on the seventh (7th) day of every third month thereafter until December 7, 2009. All outstanding principal, interest and other charges hereunder shall be due and payable in full on June 7, 2010."

(b)  The following additional provisions are hereby inserted in the section of the Note entitled "ADDITIONAL TERMS":

   (i)    "Notwithstanding anything to the contrary as set forth in this note, the rate of interest payable hereunder shall never be less than five and a half percent (5.5%) per annum."

   (ii)   "I agree that I will not incur any additional indebtedness for borrowed money or grant any liens or security interests against any of my real estate without your prior written consent."

   (iii)  "If any of my real estate is sold, any net proceeds remaining after satisfaction of prior liens and payment of ordinary closing expenses shall be paid to you to reduce the indebtedness hereunder."

   (iv)   "I will not convey or encumber any timber on the real property serving as collateral for this note."

   (v)    "To secure payment and performance of my obligations hereunder, I hereby grant you a security interest in any timber to be cut or any timber which may be cut on any property securing this indebtedness, which security interest shall be perfected by the filing by you of one or more Uniform Commercial Code financing statements or otherwise as required by law. In the event of a default hereunder you shall have all of the remedies available under applicable law, including those set forth in the Uniform Commercial Code as in effect in North Carolina."

   (vi)   "I shall provide monthly marketing updates with respect to my efforts to sell any and all of my real properties.

   (vii)  "I shall provide to you quarterly balance sheets and income statements prepared in accordance with generally accepted accounting principles no later than fifteen days after the end of each quarter, which financial statements shall be certified by at least one of my trustees as being accurate in all material respects."

2.  *Inconsistent Provisions.* To the extent that the Deed of Trust or any other agreement executed or delivered in connection with the Loan is inconsistent with the revised terms which are set forth in Paragraph 1 above, such documents and agreements are modified so that they are consistent with the revised provisions set forth above.

3.  *Modification Only.* The provisions of this Agreement constitute a modification of the Note and do not constitute a novation.

4.  *Defenses, Enforceability and Security.* Borrower acknowledges and agrees that there are no defenses or impediments to the enforcement by the Lender of the terms of the Note, the Deed of Trust or any other document or agreement executed or delivered in connection with the Loan. The parties hereto agree that the Deed of Trust is and continues to be in full force and effect and secures the Note, as modified herein, and all of the other obligations set forth in the Deed of Trust. The Deed of Trust continues to secure both the initial obligation of $7,657,172.23 existing on the date of the Deed of Trust

2

and future obligations; provided, however, that the maximum principal amount secured by the Deed of Trust at any one time, excluding amounts described in North Carolina General Statutes § 45-70(c), shall not exceed $8,850,000.00, and all such future obligations secured by the Deed of Trust shall be incurred within fifteen (15) years after the date of the Deed of Trust.

5.    *Registration and Enhancement*.  Borrower shall pay all recording fees assessed in connection with the recordation of this Agreement and shall deliver to Lender an endorsement to title insurance policy number M-9702-1233552 issued by Stewart Title Guaranty Company (the "Policy") in connection with the Loan, which endorsement shall change the effective date of the Policy to the time of the registration of this Agreement in the Yadkin County, North Carolina Registry.

6.    *Guarantor Consent.*  Guarantor hereby agrees and consents to all of the provisions set forth above and agrees that the Guaranty remains in full force and effect and is enforceable in accordance with its terms.

7.    *Merger Clause.*  This Agreement sets forth the entire understanding of the parties with respect to the modification of the Note, the Deed of Trust and other agreements executed or delivered in connection with the Loan and supersedes any prior written or oral communication or understanding with respect to such modification.

8.    *Governing Law*.  This Agreement is made in and shall be governed by and construed in accordance with the laws of the State of North Carolina.

9.    *Other Covenants Unchanged*.  Except as expressly set forth in this Agreement, the Note, the Deed of Trust and all other agreements executed or delivered in connection with the Loan shall remain in full force and effect and shall be unchanged.

10.    *Successors and Assigns*.  This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their heirs, successors and assigns.

11.    *Representations and Warranties by Trustees.*  Each of the individuals signing below on behalf of the Borrower represents and warrants that he is a duly appointed trustee of Mingo Tribal Preservation Trust (the "Trust") and that the three individuals signing below on behalf of the Trust are all of the trustees duly appointed and serving pursuant to the terms of the Trust.  Each of such trustees represents and warrants that this Agreement has been duly approved by all necessary action of the Trust and its trustees, that he is duly authorized to execute this Agreement for and on behalf of the Trust and that the Note, the Deed of Trust and all other agreements executed in connection with the Loan are duly enforceable against the Trust and all assets of the Trust, in accordance with their terms; provided, however, that the rights of Lender in the real property containing approximately 1500 acres in Wilkes County, North Carolina known as the "Homeland" shall be subject to the terms of the Trust Agreement dated January 4, 1993, pursuant to which the Borrower was established.  The Borrower and each of the individuals signing below on behalf of the Borrower represent and warrant to Lender that the aforedescribed "Homeland" property does not include any of the property conveyed in the Deed of Trust or any of the property conveyed in a deed of trust from the Trustees of the Borrower in favor of Ball Ventures LLC dated January 29, 2004 and recorded in Book 936, Page 394 of the Wilkes County, North Carolina Public Registry.

WITNESS the signatures of the undersigned, this the day and year first above written.

Mingo Tribal Preservation Trust

By: _Jesse W. Horton Jr._

Jesse W. Horton, Jr., Trustee

State of _North Carolina_

County of _Watauga_

I certify that the following person(s) personally came before me this day, each acknowledging to me that he or she voluntarily signed the foregoing document:

Jesse W. Horton, Jr., Trustee

Name of Signer)

Witness my hand and notarial stamp or seal, this _28_ day of _January_, 2010.

_Tammie C Jordan_

Signature of Notary Public

_Tammie C. Jordan_

Printed Name of Notary Public

(Official Seal)

My Commission Expires:

_June 19, 2010_

4

WITNESS the signatures of the undersigned, this the day and year first above written.

Mingo Tribal Preservation Trust

By: _George E. Wilson_

George E. Wilson, Trustee

State of _North Carolina_

County of _Watauga_

I certify that the following person(s) personally came before me this day, each acknowledging to me that he or she voluntarily signed the foregoing document: George E. Wilson, Trustee

Name of Signer)

Witness my hand and notarial stamp or seal, this _28_ day of _January_, 2010.

_Tammie C. Jordan_

Signature of Notary Public

_Tammie C. Jordan_

Printed Name of Notary Public

(Official Seal)

My Commission Expires:

_June 19, 2010_

5

WITNESS the signatures of the undersigned, this the day and year first above written.

Mingo Tribal Preservation Trust

By: _Mark R Ricks_____
Mark R. Ricks, Trustee

State of _Idaho_

County of _Teton_

I certify that the following person(s) personally came before me this day, each acknowledging to me that he or she voluntarily signed the foregoing document:
Mark R. Ricks, Trustee
Name of Signer)

Witness my hand and notarial stamp or seal, this 29th day of Jan. , 2010.

_Lisette N. Bott_
Signature of Notary Public
_Lisette N. Bott_
Printed Name of Notary Public

LESETTE N. BOTT
NOTARY PUBLIC
STATE OF IDAHO

(Official Seal)

My Commission Expires:
_1-3-12_

6

WITNESS the signatures of the undersigned, this the day and year first above written.

_Jesse W. Horton_ (signature)

Jesse W. Horton, Jr., Guarantor

State of _North Carolina_

County of _Watauga_

    I certify that the following person(s) personally came before me this day, each acknowledging to me that he or she voluntarily signed the foregoing document:

Jesse W. Horton, Jr.

Name of Signer)

    Witness my hand and notarial stamp or seal, this _28_ day of _January_, 2010.

_Tammie C Jordan_ (signature)

Signature of Notary Public

_Tammie C Jordan_

Printed Name of Notary Public

(Official Seal)

My Commission Expires:

_June 19, 2010_

7

WITNESS the signatures of the undersigned, this the day and year first above written.

Parkway Bank

By: _Carol Shinn_

Printed Name: _Carol S. Shinn_

Title: _EVP_

_____

Todd H. Perdue, Trustee

State of _N.C._

County of _CALDWELL_

I certify that the following person(s) personally came before me this day, each acknowledging to me that he or she voluntarily signed the foregoing document:

_CAROL S. SHINN_

Name of Signer)

Witness my hand and notarial stamp or seal, this _29th_ day of _JANUARY_, 2010.

_Maria H. Moore_

Signature of Notary Public

_MARIA H. MOORE_

Printed Name of Notary Public

MARIA H. MOORE
NOTARY PUBLIC
CALDWELL COUNTY, NC

(Official Seal)

My Commission Expires:
_03/25/2014_

State of _N.C._

County of _CALDWELL_

I certify that the following person(s) personally came before me this day, each acknowledging to me that he or she voluntarily signed the foregoing document:

Todd H. Perdue. Trustee

Name of Signer)

Witness my hand and notarial stamp or seal, this _29th_ day of _JANUARY_, 2010.

_Maria H. Moore_

Signature of Notary Public

_MARIA H. MOORE_

Printed Name of Notary Public

MARIA H. MOORE
NOTARY PUBLIC
CALDWELL COUNTY, NC

(Official Seal)

My Commission Expires: _03/25/2014_

STATE OF NORTH CAROLINA

Yadkin COUNTY

In the General Court of Justice
Superior Court Division
Before the Clerk

Mortgagors-Grantors
Mingo Tribal Preservation Trust

Mortgagee - Trustee
**Parkway Bank**
**Stanley P. Dean**

Deed of Trust Book and Page
843/434

Owners of record if not original mortgagors

FINAL REPORT AND ACCOUNT

OF

FORECLOSURE SALE

G.S. 45-21.33, 31

EXHIBIT
C

All of the property referred to in the Mortgage or Deed of Trust indicated above was sold as a whole and the entire amount of the secured obligation was satisfied. If facts are otherwise, explain:
A deficiency balance will remain.

Name of Purchaser(s):
Parkway Bank

| E | ITEM | DISBURSEMENTS | RECEIPTS |
|---|------|---------------|----------|
| | Proceeds of Sale | | $5,700,000.00 |
| | Court Costs - filing fee to Clerk | $150.00 | |
| | Cost for publication of notice of sale | 2,546.90 | |
| | Trustee's Commission | 920.00 | |
| | Auctioneer's fee | 0.00 | |
| | Real Property Taxes | 0.00 | |
| | Documentary Stamps | 11,400.00 | |
| | Secured Obligations | 5,684,449.10 | |
| | Service Fee(s) to Sheriff (hearing waived) | 0.00 | |
| | Recording Costs to Register of Deeds Sub. Trustee $17; Fore. Entry $17 | 34.00 | |
| | Audit Fee to Clerk | 500.00 | |
| | Surplus sale proceeds paid to CSC* | 0.00 | |
| | TOTALS | $5,700,000.00 | $5,700,000.00 |

*List reason paid to CSC

I hereby certify that the above is a true and complete account of my receipts and disbursements and that notice of hearing, sale and resale were served upon all parties entitled to such notice by statute.

Audited and Approved                    Date of Report 6-30-11

Signature   *Beth W. Holcomb*   7-5-11

Name of Mortgagee-Trustee, Attorney-Agent
Stanley P. Dean

Signature of Mortgagee-Trustee, Attorney-Agent
*Stanley P. al*

[X] Assistant CSC        [ ] Clerk of Superior Court

# GUARANTY

<u>LENOIR</u> _____, <u>NORTH CAROLINA</u>
                    (City)                                    (State)

<u>JUNE 07, 2007</u>

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and to induce <u>PARKWAY BANK</u> _____ (herein, with its participants, successors and assigns, called "Lender"), at its option, at any time or from time to time to make loans or extend other accommodations to or for the account of <u>MINGO TRIBAL PRESERVATION TRUST</u> _____

(herein called "Borrower") or to engage in any other transactions with Borrower, the Undersigned hereby absolutely and unconditionally guarantees to Lender the full and prompt payment when due, whether at maturity or earlier by reason of acceleration or otherwise, of the debts, liabilities and obligations described as follows:

A. If this ☒ is checked, the Undersigned guarantees to Lender the payment and performance of the debt, liability or obligation of Borrower to Lender evidenced by or arising out of the following: <u>LOAN DATED JUNE 7,</u> <u>2007</u> _____ and any extensions, renewals or replacements thereof (hereinafter referred to as the "Indebtedness").

B. If this ☐ is checked, the Undersigned guarantees to Lender the payment and performance of each and every debt, liability and obligation of every type and description which Borrower may now or at any time hereafter owe to Lender (whether such debt, liability or obligation now exists or is hereafter created or incurred, and whether it is or may be direct or indirect, due or to become due, absolute or contingent, primary or secondary, liquidated or unliquidated, or joint, several, or joint and several; all such debts, liabilities and obligations being hereinafter collectively referred to as the "Indebtedness"). Without limitation, this guaranty includes the following described debt(s): _____

The Undersigned further acknowledges and agrees with Lender that:

1. No act or thing need occur to establish the liability of the Undersigned hereunder, and no act or thing, except full payment and discharge of all indebtedness, shall in any way exonerate the Undersigned or modify, reduce, limit or release the liability of the Undersigned hereunder.

2. This is an absolute, unconditional and continuing guaranty of payment of the Indebtedness and shall continue to be in force and be binding upon the Undersigned, whether or not all Indebtedness is paid in full, until this guaranty is revoked by written notice actually received by the Lender, and such revocation shall not be effective as to Indebtedness existing or committed for at the time of actual receipt of such notice by the Lender, or as to any renewals, extensions and refinancings thereof. If there be more than one Undersigned, such revocation shall be effective only as to the one so revoking. The death or incompetence of the Undersigned shall not revoke this guaranty, except upon actual receipt of written notice thereof by Lender and then only as to the decedent or the incompetent and only prospectively, as to future transactions, as herein set forth.

3. If the Undersigned shall be dissolved, shall die, or shall be or become insolvent (however defined) or revoke this guaranty, then the Lender shall have the right to declare immediately due and payable, and the Undersigned will forthwith pay to the Lender, the full amount of all Indebtedness, whether due and payable or unmatured. If the Undersigned voluntarily commences or there is commenced involuntarily against the Undersigned a case under the United States Bankruptcy Code, the full amount of all Indebtedness, whether due and payable or unmatured, shall be immediately due and payable without demand or notice thereof.

4. The liability of the Undersigned hereunder shall be limited to a principal amount of $ <u>8,850,000.00</u> _____ (if unlimited or if no amount is stated, the Undersigned shall be liable for all Indebtedness, without any limitation as to amount), plus accrued interest thereon and all other costs, fees, and expenses agreed to be paid under all agreements evidencing the Indebtedness and securing the payment of the Indebtedness, and all attorneys' fees, collection costs and enforcement expenses referable thereto. Indebtedness may be created and continued in any amount, whether or not in excess of such principal amount, without affecting or impairing the liability of the Undersigned hereunder. The Lender may apply any sums received by or available to Lender on account of the Indebtedness from Borrower or any other person (except the Undersigned), from their properties, out of any collateral security or from any other source to payment of the excess. Such application of receipts shall not reduce, affect or impair the liability of the Undersigned hereunder. If the liability of the Undersigned is limited to a stated amount pursuant to this paragraph 4, any payment made by the Undersigned under this guaranty shall be effective to reduce or discharge such liability only if accompanied by a written transmittal document, received by the Lender, advising the Lender that such payment is made under this guaranty for such purpose.

5. The Undersigned will pay or reimburse Lender for all costs and expenses (including reasonable attorneys' fees and legal expenses) incurred by Lender in connection with the protection, defense or enforcement of this guaranty in any litigation or bankruptcy or insolvency proceedings.

This guaranty includes the additional provisions on page 2, all of which are made a part hereof.

This guaranty is ☒ unsecured; ☐ secured by a mortgage or security agreement dated _____.
☐ secured by _____

IN WITNESS WHEREOF, this guaranty has been duly executed by the Undersigned the day and year first above written.

*Jesse W Horton*
_____
JESSE W. HORTON JR.

_____

_____
"Undersigned" shall refer to all persons who sign this guaranty, severally and jointly.

**EXHIBIT D**

6. Whether or not any existing relationship between the Undersigned and Borrower has been changed or ended and whether or not this guaranty has been revoked, Lender may, but shall not be obligated to, enter into transactions resulting in the creation or continuance of Indebtedness, without any consent or approval by the Undersigned and without any notice to the Undersigned. The liability of the Undersigned shall not be affected or impaired by any of the following acts or things (which Lender is expressly authorized to do, omit or suffer from time to time, both before and after revocation of this guaranty, without notice to or approval by the Undersigned): (i) any acceptance of collateral security, guarantors, accommodation parties or sureties for any or all Indebtedness; (ii) any one or more extensions or renewals of Indebtedness (whether or not for longer than the original period) or any modification of the interest rates, maturities or other contractual terms applicable to any Indebtedness; (iii) any waiver, adjustment, forbearance, compromise or indulgence granted to Borrower, any delay or lack of diligence in the enforcement of Indebtedness, or any failure to institute proceedings, file a claim, give any required notices or otherwise protect any Indebtedness; (iv) any full or partial release of, settlement with, or agreement not to sue, Borrower or any other guarantor or other person liable in respect of any Indebtedness; (v) any discharge of any evidence of Indebtedness or the acceptance of any instrument in renewal thereof or substitution therefor; (vi) any failure to obtain collateral security (including rights of setoff) for Indebtedness, or to see to the proper or sufficient creation and perfection thereof, or to establish the priority thereof, or to protect, insure, or enforce any collateral security; or any release, modification, substitution, discharge, impairment, deterioration, waste, or loss of any collateral security; (vii) any foreclosure or enforcement of any collateral security; (viii) any transfer of any Indebtedness or any evidence thereof; (ix) any order of application of any payments or credits upon Indebtedness; (x) any election by the Lender under §1111(b)(2) of the United States Bankruptcy Code.

7. The Undersigned waives any and all defenses, claims and discharges of Borrower, or any other obligor, pertaining to Indebtedness, except the defense of discharge by payment in full. Without limiting the generality of the foregoing, the Undersigned will not assert, plead or enforce against Lender any defense of waiver, release, statute of limitations, res judicata, statute of frauds, fraud, incapacity, minority, usury, illegality or unenforceability which may be available to Borrower or any other person liable in respect of any Indebtedness, or any setoff available against Lender to Borrower or any such other person, whether or not on account of a related transaction. The Undersigned expressly agrees that the Undersigned shall be and remain liable, to the fullest extent permitted by applicable law, for any deficiency remaining after foreclosure of any mortgage or security interest securing Indebtedness, whether or not the liability of Borrower or any other obligor for such deficiency is discharged pursuant to statute or judicial decision. The Undersigned shall remain obligated, to the fullest extent permitted by law, to pay such amounts as though the Borrower's obligations had not been discharged.

8. The Undersigned further agrees that the Undersigned shall be and remain obligated to pay Indebtedness even though any other person obligated to pay Indebtedness, including Borrower, has such obligation discharged in bankruptcy or otherwise discharged by law. "Indebtedness" shall include post-bankruptcy petition interest and attorneys' fees and any other amounts which Borrower is discharged from paying or which do not otherwise accrue to Indebtedness due to Borrower's discharge, and the Undersigned shall remain obligated to pay such amounts as though Borrower's obligations had not been discharged.

9. If any payment applied by Lender to Indebtedness is thereafter set aside, recovered, rescinded or required to be returned for any reason (including, without limitation, the bankruptcy, insolvency or reorganization of Borrower or any other obligor), the Indebtedness to which such payment was applied shall for the purposes of this guaranty be deemed to have continued in existence, notwithstanding such application, and this guaranty shall be enforceable as to such Indebtedness as fully as if such application had never been made.

10. Until the obligations of the Borrower to Lender have been paid in full, the Undersigned waives any claim, remedy or other right which the Undersigned may now have or hereafter acquire against Borrower or any other person obligated to pay Indebtedness arising out of the creation or performance of the Undersigned's obligation under this guaranty, including, without limitation, any right of subrogation, contribution, reimbursement, indemnification, exoneration, and any right to participate in any claim or remedy the Undersigned may have against the Borrower, collateral, or other party obligated for Borrower's debts, whether or not such claim, remedy or right arises in equity, or under contract, statute or common law.

11. The Undersigned waives presentment, demand for payment, notice of dishonor or nonpayment, and protest of any instrument evidencing Indebtedness. Lender shall not be required first to resort for payment of the Indebtedness to Borrower or other persons or their properties, or first to enforce, realize upon or exhaust any collateral security for Indebtedness, before enforcing this guaranty.

12. The liability of the Undersigned under this guaranty is in addition to and shall be cumulative with all other liabilities of the Undersigned to Lender as guarantor or otherwise, without any limitation as to amount, unless the instrument or agreement evidencing or creating such other liability specifically provides to the contrary.

13. This guaranty shall be enforceable against each person signing this guaranty, even if only one person signs and regardless of any failure of other persons to sign this guaranty. If there be more than one signer, all agreements and promises herein shall be construed to be, and are hereby declared to be, joint and several in each of every particular and shall be fully binding upon and enforceable against either, any or all the Undersigned. This guaranty shall be effective upon delivery to Lender, without further act, condition or acceptance by Lender, shall be binding upon the Undersigned and the heirs, representatives, successors and assigns of the Undersigned and shall inure to the benefit of Lender and its participants, successors and assigns. Any invalidity or unenforceability of any provision or application of this guaranty shall not affect other lawful provisions and application hereof, and to this end the provisions of this guaranty are declared to be severable. Except as authorized by the terms herein, this guaranty may not be waived, modified, amended, terminated, released or otherwise changed except by a writing signed by the Undersigned and Lender. This guaranty shall be governed by the laws of the State in which it is executed. The Undersigned waives notice of Lender's acceptance hereof.

STATE OF NORTH CAROLINA

COUNTY OF FORSYTH

    **Jerry H. Ollis**, being duly sworn, deposes and says that he is a Senior Vice President for the Plaintiff, Parkway Bank, in the above-titled action; that he has read the foregoing Complaint and knows the contents thereof; and that the same is true of his own knowledge based upon business records made and kept in the course of regularly conducted business of Parkway Bank, except as to matters therein stated to be alleged on information and belief, and as to those matters he believes them to be true.

_____
**Jerry H. Ollis**
Senior Vice President
Parkway Bank


_Caldwell_     County, North Carolina

    Signed and sworn to before me this day by **Jerry H. Ollis**.

Date: _7-18-2011_

_____
Official Signature of Notary

GARY S FORD
_____
Notary's printed or typed name, Notary Public

My commission expires: _6-28-2014_

GARY S. FORD
NOTARY PUBLIC
CALDWELL COUNTY, N. C.
My Commission Expires _____