# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL ACTION NO. 5:13-CV-113

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR PARKWAY BANK, | )<br>)<br>)<br>) |
| **Plaintiff,** | )<br>) |
| v. | )     **ORDER** |
| | ) |
| MINGO TRIBAL PRESERVATION TRUST, JESSE W. HORTON, JR. TRUSTEE, AND JESSE W. HORTON, JR., INDIVIDUALLY, | )<br>)<br>)<br>)<br>) |
| **Defendants.** | )<br>) |

**BEFORE THE COURT** is Mingo Tribal Preservation Trust ("Mingo"), Jesse W. Horton, Jr., Trustee of Mingo ("Trustee"), and Jesse W. Horton, Jr's., individually ("Horton") Motion to Dismiss.[1] (Doc. 22). Plaintiff Federal Deposit Insurance Company ("FDIC") has filed a Response, (Doc. 27), to which Defendants have replied, (Doc. 28).

This case was originally filed in Caldwell County Superior Court by Parkway Bank on July 28, 2011. The Original Verified Complaint sought to recover a deficiency judgment. However, on March 25, 2013, Parkway Bank amended its Original Verified Complaint and added certain contractual and business tort claims. On April 26, 2013, Parkway was closed by the North Carolina Office of the Commissioner of Banks and the FDIC was appointed as receiver. On August 2, 2013, the FDIC was substituted as Plaintiff in the current action and subsequently removed the action to this Court pursuant to 12 U.S.C. § 1819.

## I.     FACTUAL ALLEGATIONS

---

[1] All three will be collectively referred to as Defendants.

1

On June 7, 2007, Parkway, Mingo, and Trustee executed a loan commitment letter. (Doc. 2-12, at ¶ 10). The letter provided that Mingo and Trustee would provide Parkway with certain financial information and that the commitment could be deemed breached if there is a material adverse change in the business of Mingo. (*Id.*). On June 7, 2007, Parkway made a loan in the amount of $8,850,000.00 (the "Loan") to Mingo. (*Id.* at ¶ 7). The Loan was evidenced by a June 7, 2007, promissory note in the amount of $8,850,00.00 (the "Note.").[2] The Note was secured by a Deed of Trust of even date encumbering 1,368.53 acres in Yadkin County. (*Id.* at ¶ 11). Jesse W. Horton, Jr. is the sole trustee of Mingo[3] and sole guarantor of the obligations under the Loan. (*Id.* at ¶ 3). Parkway, FDIC, and Trustee entered into three Loan Modification Agreements and a Forbearance Agreement between June 2007 and November 18, 2010. (*Id.* at ¶¶ 9, 13). Specifically, the Note was modified on December 7, 2008, March 7, 2009, and December 7, 2009, which ultimately extended the maturity date of the Note to June 7, 2010. (*Id.* at ¶ 13).

Plaintiff maintains it has eight causes of action arising out of the lending relationship. Specifically, Plaintiff pleads (1) breach of loan contract; (2) breach of guaranty contract; (3) negligent misrepresentation[4]; (4) aggravated breach of contract; (5) breach of the covenant of good faith and fair dealing; (6) fraud; (7) fraudulent transfer; and (8) unfair and deceptive trade practices.

Defendants seek, pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure, to dismiss the Third, Fourth, Fifth, Sixth, Seventh, and Eighth causes of action in the Amended Complaint. Defendants are attempting to dismiss all extra-contractual claims from the case while allowing the contractual claim for a deficiency to remain.

---

[2] The Note, all modifications, and the forbearance agreement are all attached as exhibits to Defendants' Motion to Dismiss. *See* (Doc. 22, Exs. A-E). These documents are quoted, referenced, and relied upon repeatedly in the Amended Complaint. Accordingly, the Court will consider these documents without converting the motion to one for summary judgment. *Tellabs, Inc. v. Maker Issues & Rights*, 551 U.S. 308, 322 (2007).
[3] The Court notes that other Loan documents show that there are other trustees in addition to Jesse W. Horton, Jr.
[4] While entitled "negligent misrepresentation", the claim states that some or all of the activities at issue were "willful, reckless, and grossly negligent." (Doc. 2-12, at ¶ 38).

## II. STANDARD OF REVIEW

A motion filed pursuant to 12(b)(6) of the Federal Rules of Civil Procedure challenges the legal sufficiency of a complaint. *Jordan v. Alternatives Res. Corp.*, 458 F.3d 332, 338 (4th Cir. 2006); *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). While a complaint need not contain detailed factual allegations, the courts require more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (applying Rule 8).

Rule 12(b)(6) protects against meritless litigation by requiring sufficient factual allegations "to raise a right to relief above the speculative level" so as to "nudge[ ] the[ ] claims across the line from conceivable to plausible." *Twombly*, 500 U.S. at 555, 570; *see Iqbal*, 556 U.S. at 662. Under *Iqbal*, the court performs a two-step analysis. First, it separates factual allegations from allegations not entitled to the assumption of truth. Second, it determines whether the factual allegations, which are accepted as true, "plausibly suggest an entitlement to relief." 556 U.S. at 681.

Under a motion to dismiss under 12(b)(6), the court must accept as true all factual allegations in the pleading and all reasonable inferences must be drawn in the non-movants favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). This requirement applies only to facts, not legal conclusions, however. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Further, district courts do not have to blindly accept "allegations that contradict matters properly subject to judicial notice." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (under 12(b)(6), it is ordinary for a court to consider matters of which it may take judicial notice). This is seen as a narrow exception to Rule 12(d)'s requirement that

matters considered outside of the pleadings will convert the motion to summary judgment. *Clatterbuck v. Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013).

**III.** **ANALYSIS**

      A.    Do the FDIC's Claims Fall Within the Independent Tort Exception?

          1.    The General Rule and Its Exception

Defendants have moved to dismiss the entirety of the extra-contractual claims by citing *Strum v. Exxon Co., USA*, 15 F.3d 327, 329 (4th Cir. 1994), where the Fourth Circuit, applying North Carolina law, refused to allow a plaintiff to pursue tort theories where the dispute was covered by the contract between the parties and the plaintiff did not allege viable independent tort claims. Therein, the Fourth Circuit recognized that there is little to no justification for awarding punitive damages in a breach of contract case. *Id.* at 330. Tort law is fault based and its purpose is to compensate the victim and punish unreasonable action; however, contract law and its damages seek to uphold the agreement reached between the parties. *Id.* The very purpose of a contract is to allow parties to determine, allocate, and mitigate perceived risks. *Id.* Where the parties do so, it is inappropriate to inject the uncertainty of punitive damage awards. *Id.*

"Only where a breach of contract also constitutes an 'independent tort' may tort actions be pursued." *Id.* (quoting Restatement (Second) of Contracts § 355 (1981)). This exception has been "carefully circumscribed" by North Carolina law. *Id.* at 331. "The independent tort alleged must be identifiable, and the tortious conduct must have an aggravating element such as malice or recklessness before any punitive damages may be recovered." *Id.* (internal quotations and citations omitted). "The mere failure to carry out a promise in contract . . . does not support a tort action for fraud." *Id.* at 331. Further, it is "unlikely that an independent tort could arise in the course of

4

contractual performance, since those sorts of claims are most appropriately addressed by asking simply whether a party adequately fulfilled its contractual obligations." *Id.* at 333.

2. Application

In Defendants' motion to dismiss, they compare contractual provisions with the alleged improper activities underlying each of the extra-contractual claims.[5] The extra-contractual causes of action all revolve around six subparagraphs which are first presented in Paragraph 37 of the Amended Complaint.

> i. Borrower and Guarantor failed to provide contractually required financial information which was accurate, correct, and complete

Defendants are correct in stating that there is a contractual obligation to provide this information; as is clearly referenced by the aforementioned allegation. The wrinkle is that Plaintiff has alleged tortious activity not only the performance of the Note, but also in the making of its modifications and the creation of the forebearance agreement. *Compare Strum*, 15 F.3d at 329 ("unlikely that an independent tort could arise in the course of contractual performance") *with La Tortilleria, Inc. v. Nuestro Queso, LLC*, No. 1:12-cv-408, 2014 WL 1322627 at *5 (M.D.N.C. Mar. 21, 2014) (tort claims predicated on misrepresentations during negotiations can be sufficiently independent); *Food Lion, LLC v. Schuster Marketing Corp.*, 382 F. Supp. 2d 793, 800 (E.D.N.C. 2005) (false representations made prior to and during contract formation can constitute an independent tort).

This claim specifically appears to address the 2009 Financial Statement. *See* (Doc. 2-12, at ¶ 20(b)). Plaintiff alleges that Defendants represented that Mingo owned property in a 2009 Financial Statement even though it conveyed said property in 2008. *Id.* Defendants appear to

---

[5] The Court also considers relevant allegations elsewhere in the Amended Complaint in its analysis.

argue that any alleged intentional misrepresentations in the 2009 Financial Statement would only form the basis for a breach of contract action. However, this type of misrepresentation[6] or fraud can constitute an independent tort. *Strum*, 15 F.3d at 331. Accordingly, the Court will not dismiss the tort claims as they relate to the alleged misrepresentations in the 2009 Financial Statement.

> ii. Borrower and Guarantor made representations that they could not provide financial information which existed which they knew could have been timely provided; and Borrower and Guarantor made misrepresentations that this information would be provided soon.

The Court holds that this allegation cannot be the predicate for a tort because Parkway cannot establish reasonable reliance, as stated below.

> iii. Borrower and Guarantor failed to disclose material changes in financial condition and the existence of litigation affecting financial condition.

This allegation specifically references obligations that Defendants had under the relevant contracts. As shown by Paragraphs 10 and 12 of the Amended Complaint, the duty to disclose is addressed contractually. A duty to speak may arise: (1) in the context of a fiduciary relationship; (2) where "a party has taken affirmative steps to conceal material facts from the other"; or (3) or "where one party has knowledge of a latent defect in the subject matter of the negotiations about which the other party is both ignorant and unable to discover through reasonable diligence." *Harton v. Harton*, 344 S.E.2d 117, 119 (N.C. Ct. App. 1986); *see also Bear Hollow, L.L.C. v. Moberk, L.L.C.*, No. 5:05CV210, 2006 WL 1642126, at *6 (W.D.N.C. June 5, 2006). Neither party has directly addressed whether an independent duty to disclose existed. Given that the

---

[6] The Court further holds that any claim for misrepresentation based solely on negligence does not surmount the independent tort bar because there is no aggravating circumstance present.

action will not be terminated, the Court declines to dismiss this allegation as a basis of extra-contractual tort claims. The parties may address this issue at summary judgment.

> iv. Borrower and Guarantor disposed of properties, the proceeds of which could have been used to satisfy debts to Bank without informing Bank they were doing so.

The duty to inform and pay Parkway arose from a contractual covenant contained in the December 7, 2009 loan modification agreement. *See* (Doc. 22-4, ¶1(b)); *see also* (Doc. 2-12, at ¶ 14). Accordingly, whether or not Defendants actually performed this conduct is squarely addressed by the contract and is not sufficiently independent to amount to a separate tort.

> v. Borrower and Guarantor withheld relevant information in order to receive a Forbearance Agreement with Bank.

This claim fails because Parkway cannot establish reasonable reliance, as stated below.

### B. Other Arguments Advanced for Dismissing Claims

#### 1. The Claims for Negligent Misrepresentation and Fraud Fail because Reasonable Reliance Cannot be Established with Regard to Failure to Provide Financial Information

Reasonable or justifiable reliance is an element of both negligent misrepresentation and fraud. *See Oberlin Capital, L.P. v. Slavin*, 554 S.E.2d 840, 846 (N.C. Ct. App. 2001); *Helms v. Hollands*, 478 S.E.2d 513, 517 (N.C. Ct. App. 2001). North Carolina law imposes a duty to exercise ordinary prudence in relying upon those with whom a person conducts business transactions. *Johnson v. Lockman*, 254 S.E.2d 187, 189 (N.C. Ct. App. 1979). Whether such reliance is reasonable is usually a question for the jury. *Id.* Only exceptional cases will allow resolution by the Court. *Id.* at 191. This is such a case.

Here, the Amended Complaint repeatedly avers that Parkway relied upon Defendants' promises to provide financial information and relied so to its detriment. Specifically, the

7

Complaint alleges that Parkway asked for and did not receive information related to Mingo's finances in the period after 2009. (Doc. 2-12, at ¶¶ 15-16). However, the Amended Complaint shows that Parkway proceeded to agree to the modifications and the forbearance agreement knowing it had not been provided with the financial information for which it had asked. This case represents a unique situation where the Court can find that (1) a party cannot rely upon information that has never been provided to it; and (2) a party cannot be induced to agree to a contract by promises to provide information that were never fulfilled. Accordingly, the tort claims are dismissed <u>to the extent they</u> are based upon the failure to provide financial information as an inducement to enter into a loan modification or forbearance agreement. This ruling does not affect the efficacy of other tort claims.

2. Rule 9(b)

Defendants also claim that Plaintiff failed to comply with the heightened pleading requirement set forth in Rule 9(b) of the Federal Rules of Civil Procedure. Failure to comply with Rule 9(b)'s requirements is treated as a failure to state a claim pursuant to Rule 12(b)(6). *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 n. 5 (4th Cir. 1999). Rule 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Specifically, the circumstances that must be pled with particularity are "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison*, 176 F.3d at 783 (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure: Civil* § 1297, at 590 (2d ed. 1990)). Dismissal is likely inappropriate "if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that the plaintiff has substantial prediscovery evidence of those facts."

The Court notes that Plaintiff did not have substantial prediscovery evidence of the facts that give rise to its allegations with regard to the Original Complaint. This is evidently seen in Plaintiff's response related to Defendants' statute of limitations argument, wherein Plaintiff states that it could not have discovered these tort-based causes of action until it was provided with discovery. However, the Court agrees with Plaintiff in that the point in time to look to see whether a party has substantial prediscovery evidence of those facts is viewed in relation to the current pleading subject to the motion.

The Court finds that the Amended Complaint satisfies Rule 9(b). Defendants (especially after the dismissal of parts of the causes of action) have notice of the time, place, contents, identity of persons, and what they obtained thereby. Specifically, the Court finds that Defendants have notice of the time period of the alleged tortious activities, namely the years of the lending relationship. They have notice of the place, North Carolina and Idaho. They have notice of the persons, namely Parkway and Defendants. Further, they have notice of what was obtained thereby, loan modifications, consideration from fraudulent transfers, and ultimately the forbearance agreement.

### 3. Aggravated Breach of Contract

The Court has not found any case law supporting an independent cause of action for aggravated breach of contract. Plaintiff asks the Court to allow this cause of action to survive as a basis for its requested damages and to serve as a predicate for the UDTP claim. However, the allegations of aggravated breach of contract add nothing to the Amended Complaint that has not already been addressed in depth. Accordingly, the Court sees little reason for this claim to stand independently when the underlying allegations elsewhere in the Amended Complaint can provide the necessary support for any UDTP claim. Accordingly, Claim Four is dismissed.

### 4. UDTP

Defendants maintain that Plaintiff has not pled sufficient allegations in order to maintain an action under N.C. Gen. Stat. § 75-1.1, North Carolina's Unfair and Deceptive Trade Practices Act ("UDTP"). Defendants' argument is predicated on the Court finding that all extra-contractual claims should be dismissed. *See* (Doc. 23, at 23). However, the Court has allowed extra-contractual claims to remain.

The elements of an UDTP claim under N.C. Gen. Stat. § 75-1.1 are "(1) the defendant committed an unfair or deceptive act or practice; (2) the act in question was in or affecting commerce; and (3) the act proximately caused injury to the plaintiff." *Compton v. eKirby*, 577 S.E.2d 905, 907 (N.C. Ct. App. 2003). "A trade practice is unfair if it is immoral, unethical, oppressive, unscrupulous, or substantially injurious." *Compton v. Kirby*, 577 S.E.2d 906, 917 (N.C. Ct. App. 2003) (internal alterations and quotations omitted). North Carolina courts have applied the statute liberally. *Gilbane Bldg. Co. v. Fed. Reserve Bank of Richmond, Charlotte Branch*, 80 F.3d 895, 903 (4th Cir. 1996).

"[A] plaintiff who proves fraud thereby establishes that unfair or deceptive acts have occurred." *Jones v. Harrelson and Smith Contractors, LLC*, 670 S.E.2d 242, 252 (N.C. Ct. App. 2008). This Court has already allowed the fraud cause of action to survive. Accordingly, it is unnecessary to elaborate further in order to deny Plaintiff's motion to dismiss with regard to UDTP. A corollary of the Court's finding that Plaintiff has sufficiently alleged an independent tort means that Plaintiff has alleged more than an intentional breach of contract pursuant to *Branch Banking and Trust Co. v. Thompson*, 418 S.E.2d 694, 700 (N.C. Ct. App. 1992) (providing that "a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under N.C.G.S. § 75-1.1.").

5.  Statute of Limitations

Defendants argue that Plaintiff's claims for fraudulent conveyance, UDTP, and the duty of good faith and fair dealing are barred, in part, by the statute of limitations. Relevant dates to this discussion are (1) July 28, 2011, the date the Original Verified Complaint was filed; (2) January 22, 2013, the date Defendants produced discovery pursuant to a motion to compel; and (3) March 1, 2013, the date the Amended Verified Complaint was filed. The property that was sold but still represented as owned in the 2009 Financial Statement was conveyed sometime in 2008. The properties transferred are entitled "Grandview" and "Lewis Fork."[7]

i.  Fraudulent Transfer

Plaintiff claims that Defendants made fraudulent transfers of assets and thereby violated N.C.G.S. § 39-23.4. Section 39-23.4 has two subparts. Specifically, § 39-23.4(a)(1) provides that a transfer or obligation incurred by a debtor is fraudulent as to a creditor "if the debtor made the transfer or incurred the obligation . . . [w]ith intent to hinder, delay, or defraud." Section 39.23.4(a)(2) states that a fraudulent transfer will also result if "the debtor made the transfer or incurred the obligation . . . [w]ithout receiving a reasonably equivalent value in exchange for the transfer or obligation" and the debtor must fit within one of two subsections which are not relevant to the current analysis.

The statute of limitation for fraudulent transfer is set forth in N.C. Gen. Stat. § 39-23.9. Claims under § 39-23.4(a)(1) have a statute of limitations of "four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant." N.C. Gen. Stat. § 39-23.9(1). Claims

---

[7] Plaintiff mentioned that Grandview may be in Idaho. *See* (Doc. 27, at 17). Neither party mentioned choice of law. The Court notes that the Idaho statutes in question, Idaho Code 55-918 and 55-914, contain similar provisions. Accordingly, application of choice of law will not change the outcome in this instance.

under § 39-23.4(a)(2) are extinguished "within four years after the transfer was made or the obligation was incurred."

The claim pursuant to § 39-23.9(a)(1) will not be dismissed at this stage, as the Defendants apparently concede. (Doc. 23, at 18); *see also Cowart v. Whitley*, 251 S.E.2d 627, 629 (N.C. Ct. App. 1979) (mere fact that that deed is recorded does not justify granting directed verdict in favor of debtor on grounds that creditor had to have notice of transfer for purposes of statute of limitations).

However, under § 39-23.4(a)(2), transfers of assets made prior to March 1, 2009 (four years before March 1, 2013), will be subject to dismissal unless they relate back to the date of the Original Verified Complaint. This necessarily encompasses allegations relating to the properties that were purportedly fraudulently transferred in 2008.

Plaintiff claims the entirety of the fraudulent transfer claims relate back under Rule 15 of the Federal Rules of Civil Procedure.

"Under Rule 15(c), an amended pleading relates back to the date of the original pleading when 'the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out, in the original pleading." *Feldman v. Law Enforcement Associates Corp.*, 752 F.3d 339, 346 (4th Cir. 2014). To relate back, there must first be a factual nexus between the amendment and the original allegations. *Grattan v. Burnett*, 710 F.2d 160, 163 (4th Cir. 1983). Secondly, if a factual nexus is present, the amended claims will be liberally construed so as to relate back "if the defendant had notice of the claim and will not be prejudiced by the amendment." *Id.*

The Original Verified Complaint (Doc. 1-1) solely set out claims seeking a deficiency and breach of a guaranty contract. The Original Verified Complaint mentioned the history of loan by

referencing the dates it was entered into and the fact that it had been modified several times. (Doc. 1-1, ¶¶ 6-7). There were no claims of impropriety on the part of the Defendants other than failure to pay according to the agreement between the parties.

The Court finds a sufficient factual nexus between the original allegations and the amendment. All claims arise out of the same transaction: the commercial relationship of the Plaintiff with the Defendants. Defendants could certainly anticipate that extra-contractual theories could potentially be advanced if their conduct gave rise to an independent tort. Accordingly, the Court finds that relation back is appropriate in this instance.

ii. UDTP

The statute of limitations for a UDTP claim is four years after the cause of action accrues. N.C. Gen. Stat. § 75-16.2. In this case, the UDTP claim is predicated upon actions which the Court has already held relate back to the filing of the Original Verified Complaint. Accordingly, the Court need not repeat its analysis in order not to dismiss this claim pursuant to Plaintiff's statute of limitations argument.

iii. Breach of Covenant of Good Faith and Fair Dealing

The statute of limitations for the breach of covenant of good faith and fair dealing is three years. N.C. Gen. Stat. § 1-52. However, the Court finds that any such breach would relate back to the date of the Original Verified Complaint as stated above.

C. Whether the Claims against Horton Should Be Dismissed

Defendants seek dismissal of the negligent misrepresentation, fraud, fraudulent transfer, and UDTP against Horton, individually. Defendants recognize that Jesse W. Horton, Jr. can be liable individually on his guaranty. In response, Plaintiff states that Horton is the sole trustee of Borrower, which is contradicted by the very loan documents that purport to create his guaranty.

13

Further, Plaintiff states that Horton has been the "sole point of contact" between Mingo and Parkway and that "these parties are alter egos and the guarantor/trustee is wholly liable with the Borrower for them. (Doc. 27, at 22). These two allegations are new and are not present in the Complaint. However, "[i]t is well settled that one is personally liable for all torts committed by him, including negligence, notwithstanding that he may have acted as agent for another or as an officer for a corporation." *Strang v. Hollowell*, 387 S.E.2d 664, 666 (N.C. Ct. App. 1990). Accordingly, the Court finds that it is inappropriate to dismiss the claims against Horton, individually. Further, the Court finds that dismissal is inappropriate under the alternative theory that the claims were not pleaded with specificity pursuant to Rule 9(b).

**IT IS, THEREFORE, ORDERED THAT**

(1) Defendants' Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**;

(2) The extra-contractual claims remain, except that

   a. The claim for aggravated breach of contract is dismissed;

   b. The allegations set forth in III. A. (ii), (iv), and (v) cannot form the basis of an extra-contractual claim as stated in this opinion.

Signed: April 14, 2015

Richard L. Voorhees
United States District Judge