# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL ACTION NO. 5:13-CV-113-RLV-DCK

| | |
|---|---|
| GULF COAST BANK & TRUST COMPANY, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) **ORDER** <br> ) |
| MINGO TRIBAL PRESERVATION TRUST; JESSE W. HORTON, JR., TRUSTEE; AND JESSE W. HORTON, JR., INDIVIDUALLY, | )<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

**THIS MATTER IS BEFORE THE COURT** on Mingo Tribal Preservation Trust ("Mingo"), Jesse W. Horton, Jr., as Trustee of Mingo ("Trustee"), and Jesse W. Horton, Jr's., individually ("Horton") Motion to Dismiss Fraudulent Transfer Claim for Lack of Standing. (Doc. 66). Plaintiff Gulf Coast Bank & Trust Company ("Gulf Coast") has filed a Response, (Doc. 69), to which Defendants have replied, (Doc. 70).

## I.  BACKGROUND

On June 7, 2007, Defendants took out a loan from Parkway Bank in the amount of $8,850,000.00 (the "Loan"). (Doc. 2-12 at ¶ 7). Parkway, Mingo, and Trustee executed a loan commitment letter for the Loan. (*Id*. At ¶ 10). The letter provided that Mingo and Trustee would provide Parkway with certain financial information and that the commitment would be deemed breached if there is a material adverse change in the business of Mingo. (*Id*.). The Loan was evidenced by a June 7, 2007 promissory note in the amount of $8,850,000.00 (the "Note"). (*Id*. at ¶ 11). The Note was secured by a Deed of Trust dated June 7, 2007 encumbering 1,368.53 acres

-1-

in Yadkin County. (*Id*.). On or about June 7, 2007, Horton executed and delivered to Parkway a guaranty agreement securing payment of the Note. (*Id*. At ¶ 31). The Note was modified several times: on December 7, 2008, March 7, 2009, and December 7, 2009, which ultimately extended the maturity date of the Note to June 7, 2010. (*Id*. at ¶ 13). Mingo defaulted on the Note and Parkway foreclosed on the Property, which was sold at public sale on April 15, 2011 to Parkway for $5,700,000.00, resulting in a deficiency balance on the Note of approximately $4,200,000.00. (*Id*. at ¶¶ 25, 26).

Parkway filed its Original Verified Complaint on July 28, 2011, seeking to recover a deficiency judgment against Mingo. However, on March 25, 2013, Parkway filed its Amended Verified Complaint adding, among others, an action for fraudulent transfer under N.C. Gen. Stat. § 39-23.4. On April 26, 2013, Parkway was closed by the North Carolina Office of the Commissioner of Banks and the Federal Deposit Insurance Corporation ("FDIC") was appointed as receiver. Pursuant to 12 U.S.C. § 1821, the FDIC succeeded to all of Parkway's assets and rights. On December 9, 2015, FDIC, as receiver for Parkway Bank, sold the Loan to Gulf Coast, pursuant to the Loan Sale Agreement ("LSA") (Docs. 67-1, 67-2) and the Assignment and Assumption of Interests and Obligations ("Assignment Agreement") (Doc. 67-3). As the new holder of the Loan and the true party in interest in this action, Gulf Coast was substituted for FDIC in this action on January 27, 2016.

The LSA assigns to plaintiff "all the right, title, and interest of [the FDIC] in and to [the] Loan . . . , and all rights in the Property pursuant to the Collateral Documents." . (Doc. 67-1, p. 8, 10, Sections 2.1, 2.6). "Loan(s)" is defined in the LSA as:

> (a) any obligation evidenced by a Note or other evidence of indebtedness; (b) all rights, powers, liens or security interests of Seller in or under the Collateral Document(s); . . . (f) all right, title and interest in and to any Deficiency Balance; and (g) any other asset of

whatever kind or type, all as identified on the attached Schedule of Loans by Failed Bank, including without limitation, all rights arising therefrom or appurtenant thereto.

(*Id*. at p. 5). The Assignment Agreement provides:

Whereas, Assignor and Assignee have entered into that certain Loan Sale Agreement dated as of December 9, 2015 (the "LSA), pursuant to which Assignor has agreed to sell, assign, transfer and convey to Assignee all the assets identified on <u>Exhibit B</u> attached to this Assignment (the "Assets").

. . .

1. Assignor's Assignment. Assignor hereby transfers, grants, conveys and assigns to Assignee all of Assignor's right, title and interest in the Agreements to Pay, the Collateral Documents, the Real Estate Interest, and the Miscellaneous Agreement.

(Doc. 67-3, at pp. 4-5). Exhibit B to the Assignment Agreement identifies the loan from Parkway Bank to Mingo as the asset being assigned from the FDIC to Gulf Coast. (*Id*. at 11).

## II. STANDARD OF REVIEW

When reviewing a Rule 12(b)(6) motion to dismiss, this Court must examine the legal sufficiency of the complaint; it may not resolve factual disputes or weigh the claims and defenses against one another. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Rather, the court must accept as true all of the well-plead factual allegations contained in the complaint. *See Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). A court may, however, determine whether the facts alleged are sufficient, when taken at face-value, to reasonably imply liability on the part of the defendant. In order to survive such a motion, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Indeed, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible when the factual content allows for the reasonable inference that the defendant is liable for the

misconduct alleged. *Id.*

However, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678. In order to assert a claim for relief, the complaint must allege facts that imply more than a "sheer possibility that a defendant has acted unlawfully" or "facts that are 'merely consistent with' a defendant's liability[.]" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557). Critically, "'[t]he presence . . . of a few conclusory legal terms does not insulate a complaint from dismissal . . . when the facts alleged in the complaint' cannot support the legal conclusion" alleged or the relief sought. *See Migdal v. Rowe Price-Fleming Int'l*, 248 F.3d 321, 326 (4th Cir. 2001) (quoting *Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001)). "Legal inferences drawn from the facts, unwarranted inferences, unreasonable conclusions, or arguments are not part of the [court's] consideration." *Dolgaleva v. Va. Beach City Pub. Sch.*, 364 Fed. App'x 820, 827 (4th Cir. 2010); *see also Eastern Shore Mkts., Inc. v. J.D. Assocs. LLP*, 213 F.3d 175, 180 (4th Cir. 2000).

### III. DISCUSSION

#### A. Whether the LSA and Assignment Agreement Assign the Fraudulent Conveyance Claim to Gulf Coast

Defendants first contend that Plaintiff does not have standing because the LSA and Assignment Agreement do not assign the fraudulent transfer claim to Gulf Coast. (Doc. 67, at p. 7). Essentially, Defendants argue that the FDIC's assignment of "all of its right, title, and interest" in the Loan is insufficient to assign the fraudulent transfer claim to Gulf Cost. Plaintiff attempts to rebut Defendants by arguing that "[p]art and parcel of that agreement was the assignment of all rights to collect from Defendants, including the right to void any fraudulent transfers made by Defendants." (Doc. 69, at 2). Both parties ground their arguments in North Carolina law. However, in quibbling on this issue, both parties fail to point out that North Carolina law does not govern

the interpretation and enforcement of the LSA and the Assignment Agreement. Instead, the agreements provide that both the LSA and the Assignment Agreement will be governed by, and construed in accordance with, the federal law of the United States, and to the extent federal law does not supply a rule of decision, then the agreements are governed by, construed, and enforced in accordance with the state law of New York.[1] (Docs. 67-2, 67-3). Consequently, the Court will interpret the LSA and Assignment Agreement in accordance with the laws of the State of New York to determine what, if any, claims were thereby assigned to Gulf Coast by the FDIC.

Under New York law, an assignee takes all the rights of the assignor, no greater and no less. *Beal Bank, SSB v. Nassau County*, 973 F. Supp. 130 (E.D.N.Y. 1997). "No particular words are necessary to effect an assignment; it is only required that there be a perfected transaction between the assignor and assignee, intended by those parties to vest in the assignee a present right in the things assigned." *Leon v. Martinez*, 84 N.Y.2d 83, 88, 638 N.E.2d 511, 513 (1994). "[A]n assignment of contractual rights does not necessarily include an assignment of all tort claims; rather, whether tort claims are encompassed within the assignment is a matter of contractual interpretation." *Int'l Design Concepts, LLC v. Saks Inc.*, 486 F. Supp.2d 229, 236 (S.D.N.Y. 2007). Here, the LSA and Assignment Agreement clearly assign all of the FDIC's right, title and interest in and to the Loan. The term "loan," as defined by the LSA, includes "all rights arising therefrom or appurtenant thereto" any asset "identified on the attached Schedule of Loans by Failed Bank."

---

[1] The LSA provides:

> 10.4. **Governing Law.** This Agreement will be governed by and construed in accordance with the federal law of the United States. To the extent that federal law does not supply a rule of decision, this Agreement will be governed by and construed and enforced in accordance with the laws of the State of New York, without reference to any conflict of laws rule or principle that might refer the governance or construction of the law of another jurisdiction. Nothing in this Agreement will require any unlawful action or inaction by either party.

(Doc. 67-2, at 14.)

(Doc. 67-1, at 10). The asset listed on the attached Schedule of Loans is the Loan from Parkway Bank to Mingo. (Doc. 67-2, at 19). The state courts of New York have interpreted similar language to assign all claims arising in contract from the assignor to the assignee. *See*, *e.g.*, *State of California Pub. Employees' Ret. Sys. v. Shearman & Sterling*, 95 N.Y.2d 427, 435, 741 N.E.2d 101, 105 (2000). Therefore, it is clear that, under New York law, the LSA assigns to Gulf Coast all contractual claims arising from or appurtenant to the Loan. Thus, the question the Court must next answer is whether Gulf Coast's fraudulent transfer claim sounds in contract or tort.

      B.    <u>Whether the Fraudulent Transfer Claim is a Contractual Claim and, therefore, Assignable under North Carolina Law</u>

Defendants argue that the LSA and the Assignment Agreement cannot assign the fraudulent transfer claim to Gulf Coast because such a claim is an unassignable personal tort claim under North Carolina law. *See* N.C. Gen. Stat. § 1-57; *see also* (Doc. 67, at p. 9). Given that the fraudulent transfer claim is a North Carolina statutory claim, the fraudulent transfers occurred in North Carolina, and the parties both argue under North Carolina law, this Court will apply North Carolina law to the analysis of this issue.

N.C. Gen. Stat. § 39-23.4(a)(1) provides that a transfer or obligation incurred by a debtor is fraudulent as to a creditor "if the debtor made the transfer or incurred the obligation, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . with intent to hinder, delay, or defraud any creditor of the debtor." Section 39-23.4(a)(2) provides that a fraudulent transfer will also result if "the debtor made the transfer or incurred the obligation . . . [w]ithout receiving a reasonably equivalent value in exchange for the transfer or obligation." The statute provides a creditor with several remedies against a fraudulent transfer, including the avoidance of a transfer to the extent necessary to satisfy the creditor's claim. N.C. Gen. Stat. § 39-23.4. Under N.C. Gen.

Stat. § 39-23.1, "claim" is defined as "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." "Creditor" is defined broadly as "[a] person that has a claim." *Id*. It is clear that Gulf Coast meets this definition of a creditor, given that Gulf Coast has a right to payment of the Deficiency Balance under the Loan. *See* (Doc. 67-1, at p. 5). Given that North Carolina law bars the assignment of personal tort claims, the Court must now determine whether the statutory "claim" defined under N.C. Gen. Stat. § 39-23.1 and applied to N.C. Gen. Stat. § 39-23.4(a)(1) is one sounding in tort or is one sounding in contract.

In North Carolina, "[a]n action 'arising out of contract' generally can be assigned" but "assignments of personal tort claims are void as against public policy as they promote champerty." *Horton v. New South Ins. Co.*, 122 N.C.App. 265, 268, 468 S.E.2d 856, 858 (1996). N.C. Gen. Stat. § 1-57 states that "[e]very action must be prosecuted in the name of the real party in interest . . . but this section does not authorize the assignment of a thing in action not arising out of contract." N.C. Gen. Stat. § 1-57 (2015). "Personal tort claims that cannot be assigned include claims for defamation, abuse of process, malicious prosecution or conspiracy to injure another's business, unfair trade practices and conspiracy to commit fraud." *Horton*, 122 N.C.App. at 268 (citing *Investors Title Ins. Co. v. Herzog*, 330 N.C. 681, 688, 413 S.E.2d 268, 271 (1992).

As both parties note, it appears that no North Carolina courts have addressed whether fraudulent transfer claims are assignable or arise out of contract or tort. (Docs. 67, 69). Thus, the matter appears to be one of first impression. However, given that a "claim" under the fraudulent transfer statute is defined as "a right to payment," one can fairly state that, at least in this instance, Gulf Coast's claim is grounded in the Loan itself, a contract, even though the right of action is

granted in an extra-contractual fashion (i.e., by statute, and not by the terms of the contract).[2] Furthermore, this Court agrees with Plaintiff that a claim arising from a fraudulent transfer is not personal to a creditor, particularly given that North Carolina's fraudulent transfer statute voids any fraudulent transfer by the debtor as to *any* creditor. See N.C. Gen. Stat. § 39-23.4(a)(1). The statute also provides that transfers may be fraudulent as to the creditor "whether the creditor's claim arose before or after the transfer was made or the obligation was incurred." N.C. Gen. Stat. § 39-23.4(a). As Plaintiff correctly observes, "the cause of action is focused on enforcing the rights in the loan rather than helping a victim recover for a personal wrong." (Doc. 69, at 2). Elementary principles of contract law dictate that, as assignee to and current holder of the Loan, Gulf Coast has the standing to enforce their rights to payment arising from said Loan. Those same principles guide the Court in resolving the instant matter. Indeed, to hold otherwise would defeat the purpose of the fraudulent transfer statute, and hinder creditors from enforcing their rights to payment.

Several courts have agreed that "the essence of this type of action is that of a creditor seeking payment from a debtor." *F.D.I.C. v. Hinch*, 879 F. Supp. 1099 (N.D. Okl. 1995) (citing *F.D.I.C. v. Martinez-Almodovar*, 671 F.Supp. 851, 871 (D.P.R. 1987); *United States v. Franklin Nat'l Bank*, 376 F.Supp. 378 (E.D.N.Y. 1973)). As the district court held in *Franklin*:

> 'The gravamen of the cause of action of the case at bar is the ordinary right of a creditor to receive payment; this right has been implemented by the protection of legislation concerning the circumstances under which the creditor may avail himself of assets which the debtor has transferred to others.'

---

[2] Defendants argue that if "the fraudulent [transfer] claim arises in any fashion from the contract between the parties then Mingo moves the Court to dismiss the claim under the reasoning of the original motion to dismiss." (Doc. 67, p. 11). However, Defendants' original Motion to Dismiss addressed whether fraudulent transfer was an independent cause of action from Plaintiff's breach of contract claim, not whether it arises under contract or tort.

*Franklin*, 376 F.Supp. at 384 (quoting *Hearn 45 St. Corp. v. Jano*, 283 N.Y. 139, 141, 27 N.E.2d 814, 816 (1940). Accordingly, Gulf Coast, as assignee to the Loan, has standing to bring the fraudulent transfer claim.

IV.     DECRETAL

**IT IS, THEREFORE, ORDERED THAT** Plaintiffs' Motion to Dismiss for Lack of Standing (Doc. 66) is hereby **DENIED**.

**SO ORDERED**.

Signed: August 25, 2016

Richard L. Voorhees
United States District Judge